Velilla *v.* Pizá et al.

Appeal from the District Court of San Juan, Section 2.

No. 705.—Decided December 5, 1911.

Action of Ejectment—Fundamental Requisites.—The action of ejectment, being founded upon the right of ownership, can be brought only by the real owner to recover the property owned, therefore the fundamental requisite of said action is that the claimant is the real owner of the property claimed, and this fact must be proven clearly and certainly. It must also be proven that the same property is in the possession of the defendant.

Id.—Heirship—Partition and Adjudication of Inheritance.—Heirship conveys a right to the aggregate heritage and by virtue thereof upon the death of their predecessor all of the heirs become owners in common. But until proceedings for partition and adjudication are terminated and as while these are pending this community of ownership continues, no one of the heirs may be considered as a sole and exclusive owner of any particular portion or fixed aliquot part of the property of the heritage, and, therefore, the heirship title alone is not sufficient to sustain an action of ejectment for a certain portion of the property inherited.

The facts are stated in the opinion.

*Mr. Cayetano Coll y Cuchí* for appellant.

*Messrs. López de Tord* and *Canales* for appellees.

Mr. Justice Aldrey delivered the opinion of the court.

On June 1, 1910, the aforesaid plaintiffs filed a complaint in the District Court of San Juan, Section 2, against the defendants named in the title of the case, in which they alleged substantially that, as heirs of José Angel Velilla, upon his death they acquired the rights which he had held in an undivided moiety of a farm called "Camaseyez" consisting of 150 *cuerdas* of land situated in *barrio* Sabana Seca of the

municipality of Toa Baja; that although they were the lawful owners of the moiety of said property, their aunt, Pilar Velilla, secured a possessory title to the entire farm in the year 1881, and this was inscribed in the registry of property; that thereafter, on October 18 of the same year, said Pilar Velilla sold the entire farm to Guillermo Bauzá, who conveyed it, together with other lands, to Antonio Pizá, in whose favor it is now registered subject to a mortgage placed upon it by said Pizá in favor of the other defendant, The American Colonial Bank. After alleging further that said Pizá is in possession of said farm in bad faith and without lawful title and that its value is $25,000, the plaintiffs prayed the court in an action of ejectment to declare null and void the registration of said farm in favor of the defendant Pizá, and that the undivided moiety of the same be returned to the plaintiffs free from all encumbrances in favor of the defendant bank.

The fundamental allegations of the complaint were denied by the defendant and the case went to trial when, according to the statement of the case approved by the trial judge, the plaintiffs submitted the following evidence: An order of the same district court entered on the day before the trial in which it is declared that the only heirs of Mariano Velilla, who died in the year 1873, are his two legitimate children, Pilar and José Angel Velilla y Tinajero, and also that the heirs of the latter, who died in the year 1879, are his children, María and Micaela Velilla y Porrata and Rafael and Sofía Velilla y Mercado; a certificate of the Registrar of Property of San Juan, Section 2, certifying that the first inscription of the farm called "Camaseyez" in *barrio* Sabana Seca of Toa Baja containing 150 *cuerdas* was made on October 17, 1881, in favor of Pilar Velilla y Tinajero as an inheritance from her parents and by virtue of possessory-title proceedings; that on October 18, 1881, she sold said farm to Guillermo Bauzá, who grouped it with other lands

of his own and in that form sold it to Pedro Guisti Ferrandi who sold it to Juan Pizá, the last holder of the title being Antonio Pizá who mortgaged the entire tract to the American Colonial Bank.

The testimony of the witnesses was directed substantially to the fact that Mariano Velilla possessed the farm at the time of his death. This was the only evidence introduced at the trial by the plaintiffs who stated that the other evidence they had to offer tended only to prove the damages, rents, profits, and value of the farm.

At this stage of the trial the defendants made and argued a verbal motion for nonsuit.

This motion was left pending by the court for some time and in the meantime the court admitted as evidence, against the objection of the defendant, a certificate from which it appears that in the books of the old registry of mortgages there exists an entry showing that Mariano Velilla had mortgaged an estate belonging to him in "Camaselles," Toa Baja, to secure an annuity.

After the admission of that document, or on February 23 of the present year, the court sustained the motion for nonsuit and entered judgment accordingly with costs against the plaintiffs.

The present appeal is from this judgment.

According to subdivision 5 of section 192 of the Code of Civil Procedure the court may, upon motion of the defendant, dismiss an action when the plaintiff fails to prove a sufficient case upon which to base a judgment favorable to himself. This motion for dismissal is known in American practice as a motion for nonsuit.

This was the nature of the motion made by the defendants in this suit, bringing before the court the question of whether the evidence introduced by the plaintiffs was sufficient to support a judgment in their favor if no contrary evidence were introduced.

Thus the question to be answered by the court was as to the sufficiency or insufficiency of the evidence introduced by the plaintiffs and, therefore, whether they had proven the essential allegations of the complaint in accordance with the principle that the plaintiff must prove his allegations or the action will fail.

In consequence, also, the three errors assigned by the appellants to sustain their appeal are directed to the weight placed upon the evidence by the lower court.

All of the evidence introduced by the plaintiffs to prove their right to recover the moiety of the farm in litigation may be concisely stated as follows:

1. That in the year 1819 Mariano Velilla mortgaged the farm "Camaseyez" referred to in the suit.

2. That when he died in 1873 he left two children named Pilar and José Angel Velilla y Tinajero, who, 37 years later, or in 1910, were declared his sole and universal heirs, and that upon the death of José Angel, which occurred in 1879, his children were substituted as such heirs and they are the plaintiffs in this suit.

3. That in the year 1881 Pilar Velilla Tinajero secured a possessory title to the 150 *cuerdas* which constituted the farm "Camaseyez" as acquired by inheritance from her parents, and this title was recorded in the registry of property in the same year.

4. That since the year 1881 the aforesaid property has belonged to different persons by title of purchase, the present owner being the defendant, Pizá, who mortgaged it to the defendant bank.

The action herein is a real action of ejectment.

The only question now before us is whether the plaintiffs have proven their ownership to an undivided moiety of the property in litigation by reason of being heirs of José Angel Velilla Tinajero who was one of the sole and universal heirs of Mariano Velilla, the former owner.

Before going into this question we will say that the action of ejectment being founded upon the right of ownership can be brought only by the real owner to recover the property owned and, therefore, the fundamental requisite of said action is that the claimant is the real owner of the property claimed, and this fact must be proven clearly and certainly. It must be proven also that the same property is in the possession of the defendant.

This is the doctrine contained in old Spanish legislation, which was embodied later in article 348 of the former Civil Code, and which now appears in section 354 of the Civil Code in force in Porto Rico. Said doctrine has been sanctioned by the Supreme Courts of Spain and of Porto Rico. (Decisions of the Supreme Court of Spain of May 24, 1860; March 14, April 12, May 9 and 23, 1862; February 5, 1863; February 13, 1864; January 3 and February 4, 1865; May 18, 1866; July 3, 1872, and May 27, 1905; *Ledesma* v. *González,* 1 S. P. R., 420; and *Emmanuel* v. *The People of Porto Rico,* 7 P. R. R., 216.)

Having established this we may now consider whether the plaintiffs have proved clearly and certainly that they are the owners of an undivided moiety of the property in litigation, as they claim.

They base their claim on the fact that Mariano Velilla having been the owner of said property his heirs, Pilar and José Angel, each became the owner of a moiety of the same, and that on the death of the latter his children, the plaintiffs, became such owners. They base their title, therefore, on heirship only.

It is true that articles 657 and 661 of the former Civil Code, which agree with sections 665 and 669 of the Revised Civil Code, provide that "The rights to the succession of a person are transmitted from the moment of his death" and that "Heirs succeed the deceased in all his rights and obligations by the mere fact of his death," and in accordance

with said sections the heir or heirs, if there are more than one, acquire altogether the rights of their predecessor.

Heirship conveys a joint right to the aggregate heritage, and by virtue thereof, upon the death of their predecessor, all the heirs become owners in common. But until proceedings for partition and adjudication are terminated, and until by virtue thereof this community of ownership does not cease, no one of the heirs may be considered to be the sole and exclusive owner of any particular portion or fixed and specific aliquot part of the property of the heritage, which character it is necessary to prove before an action of ejectment may prosper.

The aforesaid sections confer a right to each and all of the properties of the heritage, but not a specific right to certain properties, which can only be acquired by an adjudication lawfully made in partition proceedings.

With respect to this Manresa in his Commentaries on the Civil Code, volume 5, page 338, says:

"Moreover, in all cases—those of testamentary heirship as well as those of legal heirship—the complete effectiveness of the right to inherit implies the adjudication of the heritage in partition proceedings, according to section 1068 (equivalent to section 1035 of the Revised Civil Code), which section is in accord with the settled jurisprudence of the Supreme Court by virtue of which the partition legally made confers on each heir the exclusive ownership of the property which may have been adjudicated to him, or, as expressed in *Partida* VI of Title XIV of Law I, the *corporal possession of the property of the heritage.* And even in cases of intestate heirship it is further required that before this possession may be exercised a competent court shall have designated the heirship in the manner prescribed by sections 977 to 1,000, both inclusive, of the Law of Civil Procedure."

According to the foregoing, upon the death of the ancestor his heirs are the owners of the whole undetermined estate which is to be determined and specified by means of the partition and adjudication of the heritage, which partition and adjudication, according to section 1035 of the Revised

Civil Code (1068 of the former), is what confers on each heir the exclusive ownership of the property which may have been adjudicated to him.

It is true that in the judgment rendered by the Supreme Court of Spain on May 20, 1899, it was held that

"Taking as a basis the fact that at his death a person had full possession of certain real property by virtue of a conveyance duly recorded in the registry, it is unquestionable that from the moment of his death his children acquired the same by direct succession, and the designation of intestate heirship recorded in their favor in the registry constitutes dominion title sufficient to sustain an action of ejectment unless a better title should defeat it."

In that case, however, complete title to the property was recorded in favor of the ancestor; the action was brought by all the heirs; and they had recorded the property in their names by the presentation of a designation of heirship, none of which requisites have been complied with in the case at bar. In that case all of the heirs claimed in behalf of the community, and in this case one heir claims a moiety of an estate as his exclusive property.

The doctrine which we set forth is supported by the decisions of the Supreme Court of Spain dated January 9, 1866; January 17, 1872; December 17, 1873; April 20, 1874; January 29, 1884.

The following doctrine was laid down in the decision of June 13, 1901:

"That until the liquidation of the inheritance and, consequently, the partition and adjudication is made to each heir of his corresponding share, the heirs have no real title on which to base a recovery in ejectment of any certain and specific property of the inheritance, because the will is an insufficient title on which to institute such action." (91 Civil Jurisprudence, 915.)

As the plaintiffs have not proven that at the time of bringing the action they were the exclusive owners of an undivided moiety of the property in litigation, the trial court acted properly in sustaining the defendant's motion for non-

suit on the ground that the evidence was insufficient to warrant a judgment favorable to the plaintiffs and in rendering judgment accordingly.

For this reason said judgment should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and del Toro concurred.

Mr. Justice Wolf signed stating that he concurred in the judgment, but not in all the grounds thereof.

#### CONCURRENT OPINION FILED BY MR. JUSTICE WOLF.

My principal reason for filing a separate concurrent opinion is that it seems to me that the true rule has not been sufficiently emphasized in the opinion of the court, but stated rather by way of exception. I conceive the principle to be, ever since the days of Rome, that the heirs of a dead man succeed to all his rights and titles, and that they may bring a suit to recover all or any part of the property belonging to the decedent's estate which is held adversely to them. The exception is, when there is more than one heir, that no single heir can bring a suit to recover a particular piece or portion of property until he has been made the sole and exclusive owner of the same. All the heirs may bring such a suit, or one heir, in representation of all, might under certain restrictions successfully do so. It is almost an exemplification of the old motto "United we stand, divided we fall." I agree with the majority opinion entirely in so far as it takes as a basis for the affirmance of the judgment below the principle that where there are a number of heirs no single heir can bring a suit for a particular piece of property unless there has been a partition and a division. But I do not agree with such parts of the opinion as seem to intimate that a title such as would enable all the heirs or the succession to bring a suit of reivindication is not conplete at the instant of the death of the ancestor.

In discussing the judgment of the Supreme Court of Spain of May 20, 1899, the majority opinion, if unexplained, or separated from its context, would seem to indicate that the record in the registry of property of the declaration of heirship might afford the heirs some greater rights. I do not understand the whole opinion so to decide, but such an inference might be drawn from the words the court used in distinguishing the case cited from the case at bar. Furthermore, the citation of the judgment of the Supreme Court of Spain of June 13, 1901, standing by itself, does not seem to me to state the law clearly. All the heirs may join to bring a suit for any individual piece of property which may be held adversely to them and of which they are the true owners.